GRIFFIN MANUFACTURING CO. *v.* MITSHKUN.

1. GUARANTY—CONTRACTS—CONSTRUCTION—INTENT GOVERNS.

In construing a contract of guaranty, the intention of the parties should govern.[1]

2. CONTRACTS—CONSTRUCTION OF WRITING FOR COURT IF NOT AMBIGUOUS—WHEN QUESTION FOR JURY.

Where the language of a writing is not ambiguous, its construction is for the court, on a consideration of the entire instrument; but where the meaning of the language is obscure or susceptible of more than one interpretation, and it is necessary to determine the intention of the parties by reading the writing with reference to extrinsic facts, which are in dispute, its construction is for the jury; if the extrinsic facts are not in dispute, its construction is for the court.[2]

3. GUARANTY—CONSTRUCTION FOR COURT—DIRECTED VERDICT.

Where, in an action on a contract of guaranty, it clearly appeared from plaintiff's testimony that the guaranty was given in reference to certain orders then placed, and that the goods shipped on said orders were paid for, the defendant was not liable for goods shipped on subsequent orders, and, therefore, was entitled to a directed verdict.[3]

Error to Wayne; La Joie (Ernest P.), J. Submitted January 7, 1926. (Docket No. 56.) Decided March 20, 1926.

Assumpsit by the Griffin Manufacturing Company against Mark Mitshkun on a contract of guaranty. Judgment for defendant *non obstante veredicto*. Plaintiff brings error. Affirmed.

*Yerkes, Simons & Goddard,* for appellant.

*E. R. Milburn* and *Prewitt Semmes,* for appellee.

---

[1]Guaranty, 28 C. J. § 76; [2]Contracts, 13 C. J. §§ 996, 997; [3]Guaranty, 28 C. J. § 203.

McDONALD, J.   The plaintiff is a corporation engaged in the manufacture of steel specialties at Erie, Pennsylvania.   It has brought this action on a contract of guaranty which reads as follows:

"July 21, 1920.
"GRIFFIN MANUFACTURING COMPANY,
   "Erie, Pa.
   "*Gentlemen:*   In order to avoid prepayment which you have heretofore asked for of the Michigan Motor Specialties Company on orders for steel, I am willing to guarantee their account, and have delivered to Mr. Beck guaranty properly signed.
   "I understand Mr. Beck will be in Erie tomorrow to see you regarding this matter.
                            "Yours very truly,
                     "MICHIGAN MOTOR SPECIALTIES CO.
                              "M. MITSHKUN,
                                   "Treasurer."


                                   "Detroit, Michigan.
                                     "July 21, 1921.
"GRIFFIN MANUFACTURING CO.,
   "Erie, Pa.
   "In consideration of one dollar, or other valuable considerations, to me in hand paid, receipt whereof is hereby acknowledged, I hereby guarantee to payment of any invoices for steel which you may have against the Michigan Motor Specialties Company of Detroit, Mich.
(Seal.)                              "M. MITSHKUN."

The claim, as stated in the declaration, is that the Michigan Motor Specialties Company of Detroit desired to purchase steel of the plaintiff on credit, and to secure such credit executed and delivered to it the above guaranty.   The plaintiff claims that the guaranty is unlimited in time and amount, and was intended as security for any steel thereafter ordered and shipped to the Michigan Motor Specialties Company. The suit is to recover an unpaid balance on account of goods shipped after the guaranty was given.   The

233—Mich.—41.

defendant claims that the guaranty was limited to the orders which the plaintiff had on hand at the time it was given, and that all invoices for those orders have been paid.    At the conclusion of the plaintiff's proofs, counsel for the defendant requested the court for a directed verdict urging as the principal ground therefor that the guaranty was limited to certain orders which had been paid.    The court reserved his decision on the question, and submitted the issue to the jury on the theory that the language of the contract was ambiguous and the true meaning could not be ascertained without reference to extrinsic facts and attending circumstances.    The jury gave the plaintiff its verdict, but on motion the court entered a judgment *non obstante veredicto* for the defendant.    The plaintiff brings error.

The important question involved is whether the court erred in entering a judgment *non obstante veredicto*. Should he have granted the defendant's request for a directed verdict?    In construing a contract of guaranty the intention of the parties should govern. Where the language of the writing is not ambiguous the construction is a question of law for the court, on a consideration of the entire instrument.    But where the meaning of the language is obscure or susceptible of more than one interpretation, and it is necessary to determine the intention of the parties by reading the contract with reference to extrinsic facts, the construction is for the jury if the extrinsic facts are in dispute.    If they are not in dispute, the question is for the court.

On the theory that the contract of guaranty in the instant case was susceptible of two different interpretations, the trial court permitted the plaintiff to introduce evidence of all the extrinsic facts and instructed the jury to determine the true intention of the parties.    The question was whether the guaranty was

limited or unlimited in time and amount. Assuming that the court was right in holding that the language was ambiguous, the question is whether the extrinsic facts were in dispute, and if they were not, whether the court correctly construed the contract.

It fairly appears from undisputed testimony that for some years prior to the giving of the guaranty the plaintiff had sold steel in small amounts on credit to the Michigan Motor Specialties Company. In January or February, 1920, that company began placing orders with the plaintiff for shipments of steel of larger amounts, of $5,000 and upwards. The plaintiff refused to extend credit for such large amounts, and required a cash payment of one-half of the price of the order at the time it was placed, and the balance to be paid on sight draft with bill of lading attached. In July, 1920, the Michigan Motor Specialties Company placed with the plaintiff two large orders for 245,000 pounds of steel, amounting to $27,000. On these orders it made one shipment on sight draft with bill of lading attached. The amount was $5,145.36 and was paid. In the meantime, the Michigan Motor Specialties Company had further impaired its credit by installing a considerable amount of machinery and expanding its business. The two large orders which it had placed with the plaintiff called for steel of a special size and quality, and was to be made up specially for the Michigan Motor Specialties Company. In view of this fact, sight draft shipments were not considered sufficient protection to plaintiff from possible loss, and so it came about that after the first shipment the plaintiff demanded a cash payment of one-half of the value of each shipment, to be paid in advance of the manufacture of the steel, the balance to be paid on sight draft at the time of delivery. The Michigan Motor Specialties Company could not meet the requirements as to the cash payment, and in lieu thereof offered this guaranty, which the plaintiff accepted.

Briefly stated, these are the circumstances under which the contract of guaranty was made and the purpose for which it was given. They are established entirely by the plaintiff's witnesses. We have examined all of the competent testimony and are unable to find any substantial dispute as to the material facts. There was no question for the jury. It was the duty of the court to construe the contract in the light of the circumstances under which it was made. When so construed, we think it clearly appears that the guaranty was intended to be limited to the large orders which the plaintiff had unfilled at the time it was given. Payment on these orders was the subject of the controversy, which resulted in the giving of the guaranty. The plaintiff was demanding prepayment. The Michigan Motor Specialties Company could not make it. Plainly, that is what the defendant referred to in his letter which accompanied the guaranty.

"In order to avoid prepayment which you have heretofore asked for of the Michigan Motor Specialties Company on orders for steel, I am willing to guarantee their account and have delivered to Mr. Beck guaranty properly signed."

Mr. Beck was president of the Michigan Motor Specialties Company. Testifying for the plaintiff, he said:

"When we gave this guaranty they then waived the prepayment and shipped with sight draft attached. That was the arrangement that we did give the guaranty. I went over first and told Mr. Griffin that we couldn't afford to pay cash in advance because we didn't get paid in advance and we didn't have sufficient money to do it. He then suggested if I would get a guaranty he would waive prepayment, that is, prepayment of cash before the shipment was made. That is what I agreed to do."

Mr. Griffin, the vice-president of the Griffin Manu-

facturing Company, was also a witness for the plaintiff. He testified:

"We wouldn't make any more material if we couldn't have a guaranty. * * *

"Q. And part of that material was on the road for delivery with sight draft attached; all that you had made up, and when you got through you told him you would not make up any more of this material or deliver any more of it until he paid you half in advance or secured the amount; then he said he would get a guaranty from Mr. Mitshkun?

"A. Yes."

If the language of the guaranty in question can be said to be ambiguous, we think it is clearly established by the above testimony showing the circumstances under which it was given, that it was intended to be limited to the two large orders which the plaintiff had on hand at the time. The steel shipped on these orders was paid for by the Michigan Motor Specialties Company. The defendant was not liable on his guaranty for subsequent shipments. Therefor, the court should have directed a verdict of no cause for action. Failing in this he was right in entering judgment for the defendant *non obstante veredicto*.

The judgment is affirmed, with costs to the defendant.

BIRD, C. J., and SHARPE, SNOW, STEERE, FELLOWS, WIEST, and CLARK, JJ., concurred.