Argued October 30, 1970, affirmed January 27, petition
for rehearing denied February 23, 1971

# LLOYD CORPORATION, *Respondent, v.*
# O'CONNOR, *Appellant.*
### 479 P2d 744

*Anthony Pelay, Jr.*, Portland, argued the cause and filed a brief for appellant.

*Robert J. Miller*, Portland, argued the cause for respondent. With him on the brief were Black, Kendall, Tremaine, Boothe & Higgins, Portland.

Before O'CONNELL, Chief Justice, and DENECKE, TONGUE, and BRYSON, Justices.

BRYSON, J.

This is an action at law on a written guarantee of lease to recover rents and charges. Plaintiff, lessor, entered into a written lease with Karafune Tempura, Ltd., an Oregon corporation. The lessee agreed to pay a stipulated rental, together with other charges. The defendant and some 17 other individuals executed a "Guaranty of Lease" guaranteeing the performance

of the lease by the lessee, including the payment of rentals and other charges. The defendant guaranteed payment in an amount equal to 5.88 per cent of the total rent and charges.

Subsequent to the execution of the lease, and during the lessee's occupancy, certain written supplements and amendments were made to the lease on three occasions. The lessee was evicted and leasehold improvements were made to accommodate new tenants. The costs of these improvements were charged to lessee pursuant to the terms of the lease. Sixteen of the guarantors paid under the terms of the guaranty of lease. This action is to recover 5.88 per cent of the total net rent and charges after crediting rent received from the new tenants.

The trial court, sitting without a jury, made findings of fact and granted judgment to plaintiff.

The defendant, in his appeal, contends:

(a) That the defendant was a gratuitous guarantor of the lease and, therefore, not liable;

(b) That the defendant was discharged as a guarantor because of amendments and supplements to the lease after the execution of the lease and the guarantee of the lease without his consent;

(c) That the plaintiff received payment for all sums due it by defendant, and defendant should not be charged with plaintiff's costs in remodeling to secure new tenants.

Defendant contends that the giving of consideration for a guaranty is not sufficient, as a matter of law, to make him a compensated guarantor. He asserts that in order to be a compensated guarantor, one must be in the surety business. The only authority

cited for this proposition is *In re Landwehr's Estate*, 286 Mich 698, 282 NW 873 (1938). The case does not support defendant's contention. On the contrary, it states: "* * * the rule as to paid sureties applies to personal sureties who have received consideration for their engagement." *In re Landwehr's Estate, supra* at 705. In that case the guarantor did not receive compensation for his guaranty but was held to be a compensated guarantor merely because of his position as a director of his corporate principal.

Oregon has recognized the distinction between a compensated and a gratuitous guarantor but has treated a personal guarantor, not in the surety business and serving for compensation, as a compensated guarantor. *Marshall-Wells Co. v. Tenney et al,* 118 Or 373, 244 P 84, 45 ALR 1382 (1926).

The evidence discloses that each guarantor of the lease, including defendant, received an additional thirty-five shares of stock in the corporate lessee. The minutes of the corporation show that this stock was given to each guarantor of the lease as consideration for his executing the guarantee of lease. The evidence also discloses that the defendant was a stockholder, director and corporate secretary of the lessee, Karafune Tempura, Ltd.

■ In a law action tried by the court without a jury, the court's findings have the force and effect of a jury verdict and must be affirmed on appeal if supported by any substantial evidence. Constitution of Oregon, Article VII, § 3; ORS 17.435; *Fabre v. Halvorson,* 250 Or 238, 239, 441 P2d 640 (1968); *Kuzmanich v. United Fire and Casualty,* 242 Or 529, 531, 410 P2d 812 (1966).

■ The evidence amply supports the finding of the court that defendant was a compensated guarantor.

The trial court further found that "the parties to the lease did not make any material changes to the lease agreement after the lease agreement was executed."

■ As a compensated guarantor, only a material change in the principal contract (the lease agreement) without his consent could serve to discharge defendant of his obligations under the guaranty agreement. *Marshall-Wells Co. v. Tenney et al, supra.*

■ The defendant relies primarily on a change in the lease which allowed the lessee, Karafune Tempura, Ltd., a Japanese-style restaurant, to serve typical American food in addition to Japanese-style food. This was accomplished by deleting from the original lease the language, "no typical American food will be offered for sale in or from the demised premises at any time during the life of this lease." This was deleted at the request of the lessee, and the defendant knew that the request was made by letter. The other supplements or amendments in the lease to Karafune Tempura, Ltd., were minor matters in the description of the premises made during construction.

In other words, any changes made in the lease were not such changes as a "careful and prudent person undertaking the risk would have regarded as substantially increasing the chances of loss." *Young v. American Bonding Company*, 228 Pa 373, 380, 381, 77 A 623, 626 (1910).

Restatement, Security § 128, Modification of Principal's Duty, sets forth the rule as follows:

"Where, without the surety's consent, the principal and the creditor modify their contract otherwise than by extension of time of payment

"(a) the surety, other than a *compensated surety*, is discharged unless the modification is of a sort than can only be beneficial to the surety, and [Emphasis added.]

"(b) the compensated surety is

"(i) discharged if the modification materially increases his risk, and

"(ii) not discharged if the risk is not materially increased but his obligation is reduced to the extent of loss due to the modification.

"Comment:

"* * * * *

"c. Consent of the surety. The consent of the surety to alterations is binding on him whether expressed as a part of his obligation, given later but before the alteration, or subsequent to the alteration. In the first case he is bound on his contract, in the second he is estopped, and in the third case he has waived his defense. The surety's consent may be either written or oral."

We have ruled that defendant was a compensated guarantor. As stated above, the only change of any consequence to the lease resulted in removing a restriction in the principal contract (lease) in an effort to attract a larger clientele to the principal's place of business. There is no evidence in the record that this modification increased the defendant's risk as guarantor or increased his chances of loss.

■ Defendant contends that he did not consent to the alterations and, therefore, he should be discharged. Under the facts of this case, this contention is valid only if the alterations materially increased his risk as a guarantor. Since the alteration of the lease did not increase the risk of the defendant, as guarantor, the

contention that he did not consent to the alteration is not valid.

Further, the evidence indicates that defendant did consent to the supplements and amendments to the lease agreement as secretary to the corporate principal. The defendant, as secretary for Karafune Tempura, and with full knowledge of such changes, signed each of the amendments and supplements to the lease either before or subsequent to the alteration. *See* Restatement, Security, Comment (c), *supra*.

Finally, the defendant contends that the plaintiff has received payment. This argument is based largely on the contention that lessee and defendant guarantor should not be charged with plaintiff's costs in remodeling the premises for new tenants. This contention is without merit. The written lease provides to the contrary. Under the terms of the lease the corporate principal, Karafune Tempura, Ltd., expended $18,653 to remodel or construct the restaurant premises prior to their occupancy. The plaintiff, lessor, reimbursed Karafune Tempura, Ltd., in full for this expenditure. Article XXIV of the lease provides "* * * and the Tenant covenants and agrees, notwithstanding any entry or re-entry by the Landlord * * * to pay on the days originally fixed herein for the payment thereof, amounts equal to the several installments of rent and other charges reserved herein, * * * the Tenant shall be entitled to a credit in the net amount of rent received by the Landlord in reletting, after deduction of all expenses incurred in reletting the demised premises * * *."

After the corporate principal, lessee, quit the premises the plaintiff made several efforts to relet the premises without remodeling the same but was un-

able to do so. In attempting to relet the premises and thereby mitigate the defendant's liability under the "Guaranty of Lease," five new tenants were eventually secured to occupy the space. As in the beginning of Karafune Tempura's tenancy, the plaintiff paid for the necessary remodeling for the new tenants. In addition, the plaintiff paid for removing the improvements made by Karafune Tempura, Ltd.

The trial court held:

"* * * * *;

"8) The amounts spent by the plaintiff to remodel the leased premises for subsequent tenants were reasonable and necessary expenses of reletting [sic] the premises;

"9) The plaintiff has not been paid the amounts owing by Karagune [sic] Tempura, Ltd., and the defendant;

"* * * * *."

Again there is ample evidence to support the trial court's finding.

The judgment of the trial court is affirmed.