Argued February 18, affirmed April 1, petition for rehearing
denied April 27, petition for review denied August 11, 1971

## UNGERS' CO. ET AL, *Appellants, v.*
## LINCOLN COUNTY, *Respondent.*
### 483 P2d 81

*Melvin M. Menegat,* Newport, argued the cause for appellants. With him on the briefs was Eugene K. Richardson, Newport.

*William T. Hollen,* Newport, argued the cause and filed the brief for respondent.

Before SCHWAB, Chief Judge, and FOLEY and FORT, Judges.

FOLEY, J.

Plaintiffs appeal from a judgment of the Circuit Court of Lincoln County denying their claim for damages from the legalization of a county road which passes through their properties.

On January 19, 1966, the County Court for Lincoln County (now the Board of County Commissioners) issued an order pursuant to ORS 368.585 to survey a road known as County Road No. 702, commonly called the Drift Creek Road, located in the Alsea area of Lincoln County. ORS 368.585 (1) provides for such survey when, as was the case here, the location of any county road "cannot be accurately defined by the papers on file in the * * * county clerk's * * * offices" because of "numerous alterations" in the road since the original location and survey.[1] Following the

---

[1] ORS 368.585:

"The county court of the proper county may, if it deems it necessary, order a county road or any part thereof used and traveled by the public to be surveyed or resurveyed, platted and recorded as provided in ORS 368.590 to 368.610, where:

"(1) By reason of loss or destruction of the field notes of the original survey, defective survey or record or such numerous alterations of any county road since the original loca-

resurvey the county court set a date for a hearing on the matter of adopting the new survey, together with plat and profile, and caused notice of said hearing to be posted in certain designated places. Thereafter, plaintiffs filed objections to this legalization proceeding on the principal ground that no such county road existed in fact. Plaintiffs included a request for damages in the event the county established a road where County Road No. 702 was allegedly located. A timely petition for damages was submitted subsequently.

After the hearing the county court appointed a board of county road viewers pursuant to ORS 368.600 to investigate into this matter. Having conducted its investigation the board submitted a report containing its findings that the road as presently located is in general agreement with the original survey of 1891. The board expressed its opinion that the road was in use when plaintiffs purchased property in the area and it recommended that no damages be allowed. Thereafter, on February 9, 1967, the Board of County Commissioners entered an order adopting the resurvey of County Road No. 702 and legalizing that road as resurveyed, pursuant to ORS 368.585 et seq.

Plaintiffs then appealed to the Lincoln County Circuit Court. A trial de novo (ORS 368.525) was held on the issue of whether or not plaintiffs were entitled to damages in connection with the road legalization proceeding. On June 23, 1969, the circuit court issued a judgment denying plaintiffs' claim for damages. The judgment contained findings of fact and conclusions of

---

tion and survey that its location cannot be accurately defined by the papers on file in the proper county clerk's or county surveyor's offices;

"* * * * *"

law holding that County Road No. 702 was validly established in 1891, that it has remained open and publicly traveled since its establishment, and that the road legalization order of February 9, 1967, was proper. From this judgment the plaintiffs appeal to this court.

■ ORS 368.600 provides that no damages shall be allowed in a legalization proceeding

"\* \* \* to any person who, upon the original location of the road, received damages, or who, or whose grantor, applied for or assented to the road passing over the lands, or who, when making settlements upon the tract by him occupied, found the road in public use and traveled. \* \* \*"

The circuit court found, as did the Board of County Commissioners, that plaintiffs' grantors assented to the road passing over their lands and that plaintiffs found the road in public use and traveled when they settled upon those lands. Either one of these findings, if valid, is sufficient to preclude plaintiffs from receiving an award of damages as a result of the legalization of County Road No. 702.

■ This proceeding is in the nature of an action at law and the findings of the trial court are binding on this court if there is evidence to support them. *Cornelison v. Seabold*, 254 Or 401, 460 P2d 1009 (1969); *Kuzmanich v. United Fire and Casualty*, 242 Or 529, 410 P2d 812 (1966). (See ORS 1.160 and *McCall v. Marion County*, 43 Or 536, 73 P 1030 (1903), on nature of the proceeding.) We, therefore, now examine the evidence.

Plaintiff P. W. Lyndon inherited his property on Drift Creek Road in July 1963. Two members of the Unger family, owners of plaintiff Ungers' Co., acquired the property in question on May 11, 1959. (Wil-

liam Unger testified that Ungers' Co. purchased the Lyndon property on September 11, 1968, subsequent to the initiation of these proceedings.) Both plaintiffs and defendant introduced as exhibits a survey done in 1891 for a proposed county road in the Drift Creek area. The survey was conducted as part of road establishment proceedings which terminated in an order of the Benton County Court,[2] dated May 7, 1891, that the road be opened as a public highway. Two witnesses testified that a wooden bridge had been built on the road over Drift Creek in 1894 and one of them stated that the road existed several years before that and served 10 or 12 families living in the area. Plaintiff Lyndon himself recalled traveling a road as early as 1907. Lyndon further testified that a section of the road in the area in question here ran substantially the same course in 1907 as indicated on the survey plat of 1891. The record is replete with other evidence of the existence of a road in the Drift Creek area. There is, in fact, more than sufficient to enable the trial court to conclude that a road was established and opened for public use in 1891 and has remained open and in use continuously since then.

Plaintiffs argue that the Drift Creek Road as it now exists does not correspond to the original plat and description and that, therefore, they are entitled to compensation for property taken in the legalization proceeding, which they contend was actually a road establishment proceeding. That discrepancies exist between the road described in the original survey and the road as it in fact courses through plaintiffs' properties was recognized by the trial court. Defendant Lin-

---

[2] At the time of the original establishment proceeding, this road was in Benton County. Lincoln County, where the road is now situated, was created out of Benton County February 20, 1893.

coln County presented testimony as to these discrepancies. In addition several witnesses testified that a few changes had been made in the road course over the years. The very purpose of the road legalization statutes is to remedy such a situation by resurveying the existing road and conforming the official records to accurately reflect the true course of the road. Damages may be allowed in such a case unless the petitioner is precluded from an award by ORS 368.600. We return, then, to the principal issue at hand.

Plaintiffs cite the fact that at the time they settled upon their lands they found gates intersecting Drift Creek Road in several places in support of their contention that the road was private and that their grantors did not assent to a public roadway crossing their lands. There is no question but that these gates existed and that some were frequently kept closed, particularly on the property now owned by the Ungers' Co. However, testimony of two witnesses indicates that the purpose of these gates was to assist landowners in containing herds of cattle. Some of the gates have, in fact, been replaced by cattle guards. There is nothing in the record to suggest that these gates were installed by property owners to prevent travel over the road. One witness stated unequivocally that since his first trip up Drift Creek Road in 1955 he had never been denied access to any portion of the road. A letter in evidence, dated April 23, 1941, and signed by the then Lincoln County judge, explains to a resident of the Drift Creek Road area that maintaining gates and fences along county roads is not usually permitted but that an exception has been made for that particular road because of the economic advantages to the property owners and the lack of complaints from the general public. The letter points out, however, that if

public inconvenience required it the county would have to demand removal of the gates.

Other evidence supporting a finding that the Drift Creek Road is now and has been since 1891 a public roadway controlled by the county includes testimony that some landowners maintained sections of the road and billed the county, that at least one resident graveled the road with gravel given to him by the county, that a school bus began traveling the road in the early 1950's, and that the county has done some work on the roadway or the bridges in more recent years.

■ We find that the evidence supports the trial court's findings that County Road No. 702 was established and opened in 1891, that the plaintiffs' grantors assented to the establishment of the road, that it has remained open and traveled by the public since its establishment, and that plaintiffs found the road in such condition when they acquired the land. Under these circumstances the circuit court was required by ORS 368.600 to deny plaintiffs' petition for damages.

Affirmed.